# Richmond

## EUGENE CROWDER ALLEN v. SALLIE McCORMICK ALLEN.

January 10, 1949.

Record No. 3410.

Present, All the Justices.

*Percy S. Smith* and *Cecil Camden Cease*, for the appellant.

*Thomas H. Stone*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The appellee, Sallie McCormick Allen, on May 19, 1947, filed her bill of complaint against her husband, Eugene Crowder Allen, for a divorce from bed and board under Virginia Code, 1942, (Michie), sections 5104 and 5115. She charged him with cruelty and with having deserted her without just cause, and prayed for a divorce *a mensa;* that the decree might be merged later on into a divorce *a vinculo;* and that she be awarded the custody of their infant child, with alimony for herself and support for the child.

The husband filed an answer and cross-bill denying the

wife's allegations of cruelty and desertion and alleging that she was guilty of desertion of him. He prayed for a divorce *a mensa,* to be, in due time, merged into an absolute divorce, and for the custody of their child.

The case came on to be heard on evidence taken by depositions.

The trial court entered a decree dismissing the husband's cross-bill, awarding the wife a divorce *a mensa* on the grounds of cruelty and constructive desertion, giving her the custody of the child, and requiring the husband to pay her $20 per week for the support of herself and the child. From this decree the husband has appealed, contending, first, that the trial court erred in granting his wife a decree of divorce upon her uncorroborated testimony; second, erred in refusing to grant him a decree of divorce; and, third, erred in awarding the custody of their infant child to his wife.

The evidence shows that the couple were married on July 4, 1942, and thereafter lived together until on or about September 1, 1946, when the wife refused to sleep in the bed with her husband. A daughter was born to them, and was about four and one-half years old at the time of the institution of this suit.

Larry Gentile, a witness introduced on behalf of Mrs. Allen, testified that he was the owner of the house in which the Allens lived and that he occupied the upstairs and the Allens the downstairs apartment. He first testified on June 28, 1947. He then said that about nine months prior thereto he had given moving orders to the Allens because of the disturbance and confusion they created by "hollering back and forth like a family affair;" that both of the Allens talked loudly and used strong words at times, but he didn't know which one of them was chiefly to blame for their difficulties and for the disturbance created by them.

On being recalled to the witness stand on August 21, 1947, Gentile testified that the Allens continued to live jointly in the same apartment until June 29, 1947, the day after he first testified, when Mrs. Allen left, Mr. Allen departing the next day; that having learned that a man

named Fones had been to the Allen apartment at 1:30 a. m. on June 28, 1947, and had beaten Mrs. Allen while she was in bed, he again on that day ordered the Allens to vacate the apartment occupied by them; that Mrs. Allen admitted to him that Fones had beaten her because she was supposed to have seen him the evening before but she had gone out with another man and that Mrs. Allen had asked him to try to get Fones to return a ring which she had given to him.

Mrs. Allen testified that she had broken off marital relations with her husband in September, 1946, because he was too rough, abusive and inconsiderate of her, and she did not love him. She said that Allen was unkind to the child and had whipped the infant on one occasion with a belt strap. When asked whether she was willing to return and live with her husband, she replied: "I just don't love him. I don't want to be where he is and I don't want him to be where I am. We will never get along. I don't want him; it will be just like we are now."

No witness other than the wife testified as to her allegations of cruelty and desertion against her husband. Her testimony was not only very vague and indefinite, but it was not corroborated in a single particular.

Virginia Code, 1942, (Michie), section 5106 provides that a suit for divorce "shall be instituted and conducted as other suits are, except that the bill shall not be taken for confessed, nor shall a divorce be granted on the uncorroborated testimony of the parties or either of them, * * *."

■ The wife not having established her charges in accordance therewith, the trial court erred in granting her a divorce.

The husband, after specifically denying all of the material allegations of his wife, testified that she deserted and abandoned him on September 1, 1946, leaving their joint bedroom, and thereafter refusing to cohabit with him; that she was addicted to drinking alcoholic beverages to excess; and continually left him and their child at home at night, going to beer parlors, remaining there until late hours, and return-

ing home in a drunken condition; that she constantly consorted with a man by the name of William Fones and other men unknown to him; that she said she wanted a divorce and did not care for him; that he did not drink alcoholic beverages and he complained to his wife about her constant drinking and begged her to stop; and that he had advertised that he would not be responsible for debts incurred by others because she had involved him in so much debt. He said that he was still willing to resume living with her, if she would refrain from drinking; but that he did not believe she could stop.

Several witnesses testified that Mrs. Allen was addicted to drinking beer to excess; that she frequented taverns, sometimes taking her child with her, and there drank with male acquaintances, and that they had seen her a number of times intoxicated in public places.

Two witnesses said that Mrs. Allen, on more than one occasion, had been seen at various places in the company of men unknown to them.

Another witness stated that she had observed the child's condition and appearance, and that Mrs. Allen did not either properly feed the child or keep her clean.

By clear, positive, and satisfactory evidence, amply corroborated, the husband has established desertion on the part of the wife. This entitled him to a decree *a mensa*.

Virginia Code, 1942, (Michie), section 5111, gives the trial court authority, upon decreeing a divorce, whether from the bonds of matrimony or from bed and board, to make such further decree as it shall deem expedient concerning the care, custody and maintenance of the infant children of the parties. This is a judicial discretion which a trial court must exercise with the welfare of the infant as the paramount consideration. *Mullen* v. *Mullen, ante*, p. 259, 49 S. E. (2d) 349.

In the case at bar, it is not clear that all available pertinent evidence has been fully developed with reference to the welfare of the child. The evidence which we have stated reflects no credit on the fitness of the wife to have

the custody of the child. The record is bare of any evidence as to the qualifications and fitness of the husband for the task of caring for the child.

Under the circumstances recited, the failure to exercise the required discretion by the trial court constitutes reversible error. We are unwilling, upon the evidence before us, to undertake to determine the proper person to have the custody of the child. We are of opinion that the trial judge should hear further testimony and make final disposition of this problem.

For the reasons stated, we shall remand the case to the trial court, with direction to grant the husband a divorce *a mensa et thoro* from his wife upon the ground of desertion as of September 1, 1946, and to make further inquiry into the question of the care and custody of the infant child, and to enter such orders as may be necessary or appropriate in accordance therewith.

*Reversed and remanded.*