FELTON, J.,
concurring in part, and dissenting in part.
I respectfully dissent as to Part II of the majority opinion, but otherwise concur. Assuming without deciding that the trial court applied the correct standard of review in modifying its prior custody and visitation orders,[1] in my judgment, the trial court failed to narrowly tailor its remedy to balance the state’s compelling interest in protecting the welfare and best interests of the children, consistent with father’s constitutionally protected interests in the care, companionship, upbringing and religious education of his children.
The trial court, in my view, erred in ordering the termination of father’s right to visit with his children in person; in severely restricting his ability to communicate with his children by telephone to a period of only thirty minutes on Saturday evenings; and in granting to mother, in her sole discretion, the absolute right to terminate calls when she determined father was “engaging in the type of conduct for which his in person visitation is being terminated.”
In its final order dated April 15, 2002, the trial court ordered:
that the sole legal custody of the parties’ children is awarded to plaintiff with no visitation to defendant. Defendant shall have the right to talk with the children for up to one-half hour by telephone every Saturday night between 6:30 *530 p.m. and 8:15 p.m. unless otherwise agreed to by the parties. Plaintiff has the absolute right to monitor all such calls and the right to end any such call if she determines in good faith that the defendant is engaging in the type of conduct for which his in-person visitation is being terminated as set out in the ... opinion letter [also dated April 15, 2002].
(Emphasis added).
Custody and visitation determinations are among the most difficult facing our trial courts. When a marriage is irretrievably broken, the court is required to balance the constitutionally protected interests of parents in the care, companionship and education of their children with the welfare and best interests of the children. Code § 20-124.2(B) provides in part:
In determining custody, the court shall give primary consideration to the best interests of the child. The court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the primacy of the parent-child relationship.... As the United States Supreme Court has observed:
[T]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents----Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.
Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982).
Dissenting on other grounds, then Justice Rehnquist wrote: I do not disagree with the majority’s conclusion that the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment.
*531 Id. at 774, 102 S.Ct. at 1405 (citations omitted). He further observed:
[T]he interest of parents in a continuation of the family unit and the raising of their own children ... cannot easily be overstated. New consequences of judicial action are so grave as the severance of natural family ties. Even the convict committed to prison and thereby deprived of his physical liberty often retains the love and support of family members. “This Court’s decisions have by now made plain beyond the need for multiple citation that a parent’s desire for and right to ‘the companionship, care, custody and management of his or her children’ is an important interest that ‘undeniably warrants deference and, absent a powerful countervailing interest, protection.’ Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551.”
Id. at 787, 102 S.Ct. at 1412 (quoting Lassiter v. Dep’t of Soc. Serv., 452 U.S. 18, 27, 101 S.Ct. 2153, 2161, 68 L.Ed.2d 640 (1981)).
Parents have a fundamental right to determine how to raise their children, and we presume that fit parents act in their children’s best interest. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). The Due Process Clause protects the “fundamental right of parents to make decisions concerning the care, custody and control of their children.” Id. at 66, 120 S.Ct. at 2060. In Griffin v. Griffin, 41 Va.App. 77, 581 S.E.2d 899 (2003),[2] this Court stated that “[cjustody and visitation disputes between two fit parents involve one parent’s fundamental right pitted against the other parent’s fundamental right. The discretion afforded trial courts under the best-interest test, Code § 20-124.3, reflects a finely balanced judicial response to this parental deadlock.” Id. at 83, 581 S.E.2d. at 902.
In Kogon v. Ulerick, 12 Va.App. 595, 405 S.E.2d 441 (1991), this Court said:
*532 In matters concerning custody and visitation, the welfare and best interests of the child are the “primary, paramount, and controlling consideration[s].” Mullen v. Mullen, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948). “A child’s continuing relationship with both parents [is] an important consideration.” M.E.D. v. J.P.M., 3 Va.App. 391, 397, 350 S.E.2d 215, 219 (1986). Except under unusual circumstances, a child’s best interests are served by maintaining close ties between him and his non-custodial parent. Eichelberger v. Eichelberger, 2 Va.App. 409, 412, 345 S.E.2d 10, 12 (1986).
Id. at 596-97, 405 S.E.2d at 442.
Included in the fundamental liberty interest of a parent to raise his children is the right of a parent to educate his children in his religious beliefs. Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Pierce v. Society of Sisters, 268 U.S. 510, 518, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). In the case of custody and visitation of children by divorced parents, each parent has the right to educate the children, including in the parent’s religious beliefs, without government intervention, except where there is a compelling government interest requiring such intervention, such as the physical and mental well-being of the children. Yoder, 406 U.S. at 230, 92 S.Ct. at 1540-41; Prince v. Massachusetts, 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944). If the court determines, as the trial court did here, that there was harm substantial enough to interfere with the father’s constitutionally protected interests with respect to his children, it must then engage in a balancing process to fashion a remedy that imposes the least possible infringement upon the parent’s constitutionally protected interests. Smith, 494 U.S. at 881, 110 S.Ct. at 1601; Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Horen v. Commonwealth, 23 Va.App. 735, 742-43, 479 S.E.2d 553, 556-57 (1997) (citing Sherbert, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965; Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15).
*533 In my judgment, the record in this case reflects that the father’s religious beliefs, his insistence that the children adopt them and be governed by them, and his insistence on telling his children that their mother and primary caregiver is “ungodly,” is at the core of the parties’ continuing disputes over custody and visitation. By father’s agreement, mother was deemed to be the proper person to be the primary caregiver of the children, bearing the day-to-day responsibility for their safety, well-being and upbringing. Initially, father was granted liberal visitation rights. Subsequently, however, father relocated to Asheville, North Carolina, some considerable distance away from the children’s home in Richmond, Virginia, making visitation with them at his new home difficult in terms of both time and travel. Additionally, father was remarried to a woman who shared his religious beliefs and who had three young children from a prior marriage. The children, whose custody and visitation are at issue here, voiced concern that, on their visits their father failed to give them the attention they wanted and needed because of the added responsibilities he had with the three stepchildren.
During periods of the children’s visitation with him, father insisted that they read the Bible, do chores, and participate in religious activities consistent with his beliefs. If the children did not obey his directions to read the Bible or otherwise disobeyed him, he punished them, at times physically by spanking. Consistent with his religious beliefs, he told the children that when they disobeyed him, that behavior was a sin against both the father and God. When they acted in a manner that displeased father, particularly in his instructions of Bible reading, he accused them of being “ungodly” and told them that they would likely be condemned to eternal damnation if the offending behavior continued. On one occasion, after a period of visitation during Christmas 2000, father sent the children back with Bibles he had given them, with instructions that they read them at their home. They told mother that they would be tested on the readings when they returned to visit father. They also reported they would face punishment if they could not pass the test on the readings. Mother *534 returned the Bibles to father by mail, saying that they did not read the Bible in her house.
The record reflects that mother admitted adultery and that at a point in time prior to her remarriage, her fiance lived in the home with mother and the children. Consistent with his beliefs, father told the children that mother, their primary caregiver, was a fornicator, was ungodly, and would be condemned to hell. Moreover, and again consistent with his religious beliefs, he insisted that the children call his new wife their “godly mother.”
In its letter opinion, the trial court did not question the sincerity of father’s religious beliefs. It based its finding of harm to the children primarily on father’s continued denouncement of mother as being a fornicator, sinful, ungodly and condemned to hell. It further based its findings on the children’s strong resistance to the visits with father; their fear of his punishment; their announced headaches, stomachaches, and other physical/psychological complaints prior to their scheduled visits; as well as their despondency after returning from those visits. While the denouncements of mother were consistent with his religious beliefs, they were found by the trial court to undermine the primary caregiver’s responsibilities and authority in the eyes of the children, and were “causing serious psychological and emotional damage to the children.” The trial court further found that father’s telling his children “that the person he chose to be their primary caregiver is an adulterer and fornicator and will go to hell is unconscionable.”
Father argued to the trial court that he had “a duty to tell his children the truth about their mother.” The court ruled in its written opinion, “[i]f such duty is required by Dr. Roberts’ religion, it is outweighed by the court’s duty to protect the children’s best interests. If such duty is not required by his religion, his conduct is nothing more than a blatant disregard for his children’s best interests.”
In my view, the evidence presented to the trial court clearly reflected lack of good parenting on father’s part, especially *535 considering the ages of his children. His constant berating and condemnation of the children’s mother and primary caregiver was sufficient for the trial court to modify, or even to suspend, visitation until father had agreed to desist his harmful behavior, and had undertaken the parental counseling he had earlier agreed to undergo. However, in my judgment, the evidence was insufficient for the trial court to enter an order terminating father’s right to “in-person” visitation with his children, and to severely limit even his ability to talk with them by telephone. While the trial court found from the evidence that there was a compelling governmental interest in protecting the mental and physical well-being of the children, it failed to narrowly tailor a remedy consistent with father’s fundamental liberty interests in the care, companionship and the upbringing of his children, and his right to educate his children in his religious beliefs.
Clearly, the father’s right to freely exercise his religious beliefs, including the right to educate his children about those beliefs, is not limitless. See Prince, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). But, any limits on that constitutionally protected interest must be narrowly tailored so as only to meet the compelling state interest, while not unconstitutionally inhibiting father’s right to educate his children in his religious beliefs.
It is clear from its written opinion that the trial court carefully considered father’s exercise of his religious beliefs in his instruction to the children. It determined from the evidence presented in the case that the method and manner of father’s exercise of that religious training was harmful to the children. Father insisted that mother was evil and would go to hell. He also told the children that they committed a type of adultery when they did not obey him and his instructions to read the Bible. At times he called the children ungodly. A clinical psychologist testified at the ore tenue hearing that continued visitation with father under these circumstances was not in the best interests of the children’s health and well-being. While the trial court couched its decision in terms of *536 the best interests of the children, it is also clear in its written opinion that its concern was with the health and well-being of the children. “Clearly, the protection of children from harm, whether moral, emotional, mental, or physical, is a valid and compelling state interest.” Knox v. Lynchburg Div. of Soc. Serv., 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982) (citing Stanley, 405 U.S. at 652, 92 S.Ct. at 1213).
The trial court recognized in its written opinion that mother had requested only a modification of visitation or a temporary suspension of visitation. It reasoned, however, that because the trial court retained jurisdiction over matters pertaining to child custody and visitation during the minority of the child,[3] there was no practical difference in its order terminating father’s visitation and the mother’s requested remedy of temporary suspension of visitation, because in each case father would have to petition the court for restoration of the visitation rights under change of circumstances.
While the procedure to regain visitation rights may remain the same, there is an untold ancillary impact of a court order terminating a parent’s right to visit in person with his children.[4] This Court in Eichelberger, 2 Va.App. 409, 345 S.E.2d 10, said:
The authority vested in a trial court to decide issues concerning the care, custody, support and maintenance of the minor children, the visitation rights of the non-custodial parent, and the extent to which those rights and responsibilities shall be apportioned between estranged parents is a matter of judicial discretion which courts must exercise with the welfare of the children as a paramount consideration. See Allen v. Allen, 188 Va. 717, 721, 51 S.E.2d 207, 209 (1949); Code § 20-107.2. In the great majority of reported cases in which courts have been called upon to resolve *537 conflicts between custodial and non-custodial parents, the disputes have involved areas of fundamental rights, such as education and religion. The decisions in those cases reflect a reluctance to intervene absent a showing of harm to the child’s welfare.... When conditions are placed on visitation between a non-custodial parent and his child, it should be with awareness that, except under unusual circumstances, maintaining close ties with the non-custodial parent is in a child’s best interest.... [W]hen visitation privileges have been liberally granted without restriction, absent a finding by the court that the non-custodial parent has acted without concern for the child’s well-being or best interest, has demonstrated irresponsible conduct, has interfered with basic decisions in areas which are the responsibility of the custodial parent, or finding that the activity which is questioned by the custodial parent presents a danger to the child’s safety or well-being, neither the custodial parent nor the court may intervene to restrict activities during visitation.
Id. at 412-13, 345 S.E.2d at 11-12 (citations omitted).
I concur with the majority that there was sufficient evidence to affirm the trial court’s finding that there needed to be a modification, or even temporary suspension, in the previously ordered visitation, including the father’s promise to seek counseling in parenting skills. However, I would reverse and remand to the trial court with instructions to consider a remedy narrowly tailored to accommodate the state’s compelling interest of assuring the physical and mental well-being of the children, while not unduly limiting the father’s fundamental right to the care, companionship, upbringing and religious education of his children.
In my view, the trial court has multiple remedies available to it, short of termination of visitation, to insure the children’s visitation with their father would be without concern for their mental and physical well-being. Moreover, Code § 20-124.2 specifically grants to the trial court authority to punish for contempt any willful failure of a party to comply with the provisions of its custody or visitation orders.
*538 For the above reasons, I would remand to the trial court to narrowly tailor a remedy to accommodate the state’s compelling interest to protect the children from harm, consistent with father’s constitutionally protected interests in the care, companionship, upbringing and religious education of his children.
I respectfully dissent from Part II, but otherwise concur with the majority opinion.

. The trial court couched the issue in its opinion letter as follows:
Still, the only real question is whether Dr. Roberts’ conduct is such that continued visitation between him and the children is contrary to the children’s best interests. The court finds that it is. Whatever can be said about Dr. Roberts’ conduct, it cannot be denied that it is causing serious psychological and emotional damage to the children.
See also Code §§ 20-124.2 and 20-124.3.

. A notice of appeal was filed with the Supreme Court of Virginia on July 24, 2003, by the appellee.

. See Code § 20-124.2.

. The trial court made no finding that father was an unfit parent. See Troxel, 530 U.S. at 65, 120 S.Ct. at 2059-60 (parents have a fundamental right to determine how to raise their children; fit parents are presumed to act in their children’s best interest).