UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Huff
Argued at Alexandria, Virginia


DELORES O'BRIEN HEFFERNAN

                                                    MEMORANDUM OPINION[*] BY

v.          Record No. 2102-13-4                            JUDGE GLEN A. HUFF
                                                      JUNE 17, 2014

ARLINGTON COUNTY DEPARTMENT
 OF HUMAN SERVICES


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Elizabeth L. Tuomey (Toumey Law Firm, PLLC, on briefs), for
appellant.

Jason  L. McCandles, Assistant County Attorney; Janell Wolfe,
Guardian *ad litem* for the minor child (Office of the County
Attorney, on brief), for appellee.


Delores O'Brien Heffernan ("grandmother") appeals an order entered by the Circuit

Court of Arlington County ("circuit court") modifying an existing no contact order restricting

grandmother's access to her granddaughter ("A.O.").  Grandmother asserts four assignments of

error on appeal.  Specifically, grandmother contends the circuit court erred in modifying the no

contact order because 1) it was without authority to do so more than twenty-one days after entry

of the order; 2) the amendments are unduly restrictive and vague; 3) the amendments interfere

with grandmother's ability to litigate claims and her attorney-client privilege; and 4) the

amendments limit grandmother's right to free speech.

For the following reasons, this Court affirms the circuit court's rulings.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "That principle requires us to 'discard the evidence' of the [grandmother] which conflicts, either directly or inferentially, with the evidence presented by the [Arlington County Department of Human Services ("Department")] at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). So viewed, the evidence is as follows.

On July 22, 2010, the circuit court removed A.O. from grandmother's custody through a petition for emergency removal and placed A.O. in a foster home.[1] Subsequently, on December 7, 2011, the juvenile and domestic relations district court terminated the parental rights of A.O.'s parents; grandmother and the parents appealed to the circuit court, which terminated the parental rights of A.O.'s parents and denied grandmother's petition for custody. Additionally, the circuit court ordered that neither A.O.'s mother, nor her grandmother, were to contact A.O. The circuit court's no contact order of July 27, 2012, barred grandmother from contact "direct or indirect, attempted or completed, with [A.O.], without the prior express written permission of [Department]." On July 5, 2013, the circuit court issued a show cause against grandmother "as to why [grandmother] should not be held in contempt of court for violating the [n]o[]contact [o]rder . . . ." The matter proceeded as a criminal contempt action, and a bench trial commenced on September 30, 2013.

At trial, the evidence established that in April 2013, A.O. resided in Spring House in Chesterfield County, Virginia, which is a "group home . . . specifically for teenage girls age 12 to 19 with some kind of mental health diagnosis." On June 27, 2013, A.O. and other residents of

---

[1] Grandmother did not appear at this hearing because she fled the jurisdiction with A.O.

Spring House attended a cookout at Shire House in Chester, Virginia, a group home for teenage boys with mental health diagnoses. During the event, grandmother approached Shire House in a "gold Taurus" and asked Andrea Duffy ("Duffy"), the manager of the Spring House, and another employee named Cassandra Isom ("Isom"), for directions to another camp for children with disabilities. After providing directions to grandmother, Duffy and Isom heard grandmother yell "Aflac" in the direction of A.O., who was approximately 50-100 feet away. According to A.O., Aflac was a nickname her "whole family" used to call her when she was "really little." grandmother then drove away but a woman in an "older model Taurus," who matched grandmother's description, drove past the Shire House later in the afternoon and asked if the home was for sale. The following day, Duffy and A.O. noticed a "gold Ford Taurus parked a block from the [Spring House]," which A.O. indicated "was her grandmother."

On July 2, 2013, grandmother approached Isom after Isom dropped off A.O. for summer school classes. Grandmother asked Isom if the school "was the school that the kids who lived on Providence Road attended" and explained she was "getting ready to move" and "rent a house" in the area. On July 4, 2013, Isom again witnessed the vehicle matching the one previously driven by grandmother "circling the [Spring House]" and "driving up and down the street real slow."

A.O. testified that she saw grandmother drive by while A.O. waited at the bus stop on September 4, 2013. After alerting the Spring House staff, A.O. "kept on seeing [grandmother's] car driving back and forth . . . in front of the house" while she waited for Isom to pick her up. After dropping off A.O., Isom observed a "gold Taurus" behind her on the main street directly outside of A.O.'s school. Isom indicated that the vehicle was driven by grandmother, who appeared to be wearing a wig. Later, Isom provided a photograph of the vehicle to the school's resource officer, who confirmed that grandmother was the registered owner of the vehicle.

After hearing the evidence, the trial court made no express findings of fact and dismissed the criminal contempt charge. On October 2, 2013, the trial court *sua sponte* entered a modified no contact order, adding to the "terms stated in the [n]o[][c]ontact [o]rder of July 27, 2012." This appeal followed.

## II.  ANALYSIS

On appeal, grandmother contends the trial court erred in modifying the no contact order because 1) it was without authority to do so more than twenty-one days after entry of the original no contact order; 2) the amendments are unduly restrictive and vague; 3) the amendments interfere with grandmother's ability to litigate claims and her attorney-client privilege; and 4) the amendments limit grandmother's right to free speech.

### A.  Standard of Review

"In issues of child custody, 'the court's paramount concern is always the best interest of the child.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990)). On appeal, "there is a presumption . . . that the trial court thoroughly weighed all of the evidence, considered the statutory requirements, and made its determination based on the child's best interest." D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335, 610 S.E.2d 876, 882 (2005). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

### B.  21-Days

On appeal, grandmother first contends that the trial court erred in modifying the no contact order, because it was without authority to do so more than twenty-one days after entry of the initial order. Specifically, grandmother asserts that the trial court lacked jurisdiction under

Rule 1:1 of the Supreme Court of Virginia[2] because the modification on October 2, 2013 occurred more than twenty-one days after the initial final order on July 27, 2012. The Department contends that the trial court possessed continuing authority to modify the order under Code § 20-124.2(E).

Code § 20-124.2 provides the circuit court's authority to adjudicate claims regarding court-ordered custody and visitation rights. Code § 20-124.2(B) provides, "[i]n determining custody, the court shall give primary consideration to the best interest of the child." Moreover, Code § 20-124.2(E) provides, in relevant part, "[t]he court shall have the continuing authority to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section or § 20-103 including the authority to punish as contempt of court any willful failure of a party to comply with the provisions of the order." Additionally, "[o]nce a court has ruled on matters relating to the custody and care of minor children, and visitation rights of the non-custodial parent, the court retains jurisdiction throughout the minority status of the child involved." Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986) (citing Andrews v. Geyer, 200 Va. 107, 111, 104 S.E.2d 747, 751 (1958)). "The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation when subsequent events render such action appropriate for the child's welfare." Id. (citing Allen v. Allen, 188 Va. 717, 721, 51 S.E.2d 207, 209 (1949)).

In the current matter, the original no contact order arose from A.O's custody proceedings on June 20-26, 2012.[3] In those hearings, grandmother petitioned for custody of the minor child,

---

[2] Rule 1:1 states "All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

[3] Grandmother was previously denied guardianship of A.O. See Tackett v. Arlington County Dep. Of Hum. Servs., 62 Va. App. 296, 746 S.E.2d 509 (2013). In Tackett, this Court held that "[t]he order terminating mother's parental rights effectively set aside grandmother's

A.O., which was denied. Additionally, the Department moved for a continuation of the previous no contact orders entered on March 2, 2012 and March 14, 2012, which prohibited contact between grandmother and A.O. The Department's motion was granted, and the no contact order was entered on July 27, 2012. Despite the order, grandmother made multiple attempts to contact A.O. at the Spring House, Shire House, A.O.'s school, and at the bus stop. On October 2, 2013, the circuit court determined it was necessary to modify the July 27, 2012 no contact order because the court was "concerned for the welfare and safety of the minor child [A.O.] and . . . [was] aware of the extent to which [grandmother] and others may proceed to avoid the current [n]o[][c]ontact [o]rder . . . ." Specifically, the modified order was customized to the circumstances surrounding grandmother's behavior. "The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation when subsequent events render such action appropriate for the child's welfare." Id. (citing Allen, 188 Va. at 721, 51 S.E.2d at 209).

Further, in determining the best interest of A.O., this Court must grant the circuit court great deference as "there is a presumption . . . that the trial court thoroughly weighed all of the evidence, considered the statutory requirements, and made its determination based on the child's best interest." D'Ambrosio, 45 Va. App. at 335, 610 S.E.2d at 882. Thus, the circuit court had the statutory continuing authority and jurisdiction to modify the earlier no contact order upon determining such to be in A.O.'s best interest. Code § 20-124.2(E) ("The court shall have the continuing authority . . . to make any additional orders necessary to effectuate and enforce any

_____

guardianship, when the circuit court, having considered grandmother's care of A.O., determined that it is in A.O.'s best interest to be in the custody of [the Department] and placed for adoption with the consent of [the Department]." Id. at 328, 746 S.E.2d at 525. Additionally, this Court in Tackett, upheld the initial no contact order because "[g]randmother consistently worked to sabotage the efforts of [the Department] designed to improve A.O.'s well-being," which included initiating "unauthorized contact with A.O. at school and provided her with unauthorized cell phones." Id. at 331, 746 S.E.2d at 526.

- 6 -

order entered pursuant to this section . . . ."). Accordingly, this Court finds that the circuit court did not err in modifying the no contact order.

## C. Vagueness

Grandmother next asserts that the circuit court erred in modifying the no contact order because the amendments are unduly restrictive and vague. Specifically, grandmother argues that since the order is enforceable by law, "the tolerance for imprecision is much less than if it did not." The Department contends that grandmother is procedurally barred pursuant to Rule 5A:18.[4]

"Whether the [no contact order] is unconstitutionally vague is a question of law we review *de novo*." Covel v. Town of Vienna, 280 Va. 151, 163, 694 S.E.2d 609, 617 (2010) (citing Volkswagen of Am., Inc. v. Smit, 279 Va. 327, 335, 689 S.E.2d 679, 684 (2010)). "'The constitutional prohibition against vagueness derives from the requirement of fair notice embodied in the *Due Process Clause*' and ensures that a law 'be sufficiently precise and definite to give fair warning' of what it requires." Id. at 164, 694 S.E.2d at 617 (quoting Tanner v. City of Va. Beach, 277 Va. 432, 438-39, 674 S.E.2d 848, 852 (2009)). "Its purpose is to safeguard against the arbitrary and discriminatory application of the law when a legislative act permits a subjective interpretation by those charged with its enforcement." Id. (citing Tanner, 277 Va. at 439, 674 S.E.2d at 852).

Grandmother asserts that provisions one and two of the no contact order are unduly restrictive and unconstitutionally vague, which state:

---

[4] Before the circuit court entered the order on October 2, 2013, grandmother stated her objections to the no contact order. Grandmother argued "we submit that it is unduly restrictive. . . . Simply knowing where she is does not mean that she has contact . . . ." Additionally, grandmother argued "it's our position that that's just simply too vague, that it requires her to predict the future." Code § 8.01-384 provides that an issue is adequately preserved for appeal if "a party, at the time of the ruling or order of the court . . . makes known to the court . . . [her] objections to the action of the court and [her] grounds therefor." Accordingly, grandmother's objection to the vagueness of the order's modifications was sufficiently preserved.

1. [Grandmother] is hereby prohibited from determining, in any way, by any method or by any process, the whereabouts or location, at any time of [A.O.]; and

2. [Grandmother] is hereby prohibited from taking any action for the purpose of her being seen by [A.O.], or [A.O.]'s hearing the voice of [grandmother], or otherwise causing [A.O.] to know that [grandmother] is present or at or about the location of [A.O.], and [grandmother] is also prohibited from attempting the foregoing . . . .

Grandmother contends that the provisions are "so vague that it is impossible for [grandmother] to know what behavior, in the normal course of her living, violates them." The provisions, however, were customized to specifically address grandmother's repeated violations of the original no contact order. The evidence presented suggests that grandmother, on multiple occasions, determined A.O.'s location and followed A.O. to events at the Shire House, the Spring House, and at A.O.'s school. Moreover, grandmother resorted to yelling out A.O.'s childhood nickname in order to cause disruption. These actions were in defiance of the express terms of the no contact order of July 27, 2012. Thus, the circuit court found it necessary to modify the no contact order with stricter provisions in order to address and curb grandmother's non-compliance.

In the context of grandmother's behavior, the wording of the order's modification was necessary to address grandmother's particular actions and the terms of the modification were "sufficiently precise and definite to give fair warning" to grandmother while protecting the best interest of A.O. Tanner, 277 Va. at 439, 674 S.E.2d at 852. Therefore, the circuit court did not abuse its discretion in provisions one and two of the modified no contact order. Accordingly, this Court finds that the circuit court did not err in modifying the no contact order.

D. Ability to Litigate Claims

Next, grandmother contends that the circuit court erred in modifying the no contact order because the amendments interfere with grandmother's ability to litigate claims and violate her

attorney-client privilege. The Department argues that grandmother's assertion is procedurally barred under Rule 5A:18[5] and, in the alternative, the amendments do not unduly restrict grandmother's ability to litigate claims because the language of provision three allows grandmother to "file a motion seeking permission to proceed."

Grandmother takes issue with provision three of the modified no contact order, which states:

> 3. [Grandmother] shall not reveal, disclose, or discuss any information whatsoever regarding [A.O.] to or with anyone except a licensed attorney at law who is in good standing with the Virginia State Bar, absent good cause shown and further order of the Court . . . .

On brief, grandmother cites no relevant law or authority in support of her contention but rather argues that the provision prohibits her right to consult with anyone other than a Virginia attorney. The provision, however, is not an absolute restriction on grandmother's ability to consult an attorney. Additionally, grandmother is free to seek counsel outside of Virginia, pertaining to information relating to A.O., so long as there is "good cause shown and further order of the Court." Moreover, the provision does not restrict grandmother's ability to consult with an attorney, nor does it require disclosure of confidential communications between grandmother and her counsel. The restriction is narrowly limited to "information . . . regarding [A.O.]." "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown, 30 Va. App. at 538, 518 S.E.2d at 338. The evidence in the record supports a finding that the circuit court modified the no contact order, including provision three, as necessary and appropriate under the circumstances "for the welfare and safety of . . . [A.O.]." Accordingly, this Court finds that the circuit court did not err

---

[5] Grandmother adequately preserved her argument before the circuit court on October 2, 2013. Specifically, grandmother stated "With respect to number three, Your Honor, that interferes with her ability to [file] federal suits with federal departments and to be represented by her D.C. attorney."

in modifying the no contact order because the amendments do not interfere with grandmother's ability to litigate claims and her attorney-client privilege.

## E. Freedom of Speech

Lastly, grandmother asserts that the trial court erred in modifying the no contact order because the amendments limit grandmother's right to free speech. Specifically, grandmother takes issue with provisions three and five of the no contact order. The Department argues that grandmother is procedurally barred under Rule 5A:18[6] and, in the alternative, that the provisions are narrowly tailored to achieve a compelling state interest. Assuming without deciding that the amended no contact order constitutes restraint of free speech, the order passes a strict scrutiny analysis because of the compelling state interest in protecting the interests of the child and because of the narrowly drawn restriction.

"When . . . governmental regulation is based upon the content of speech, as opposed to a time, place, and manner classification, the regulation must be strictly scrutinized . . . because regulation that relates to subject matter 'slip[s] from the neutrality of time, place, and circumstance into a concern about content.'" Adams Outdoor Advertising v. City of Newport News, 236 Va. 370, 381, 373 S.E.2d 917, 922-23 (1988) (quoting Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 95 (1972)). Under the strict scrutiny test, a regulation of protected speech will withstand a First Amendment challenge only if the government shows that (1) it has a compelling interest in restricting speech, (2) the restrictions further such an interest, and (3) a more narrowly drawn restriction will frustrate its interest. Id. (citing Consol. Edison Co. v. Public Serv. Comm'n, 447 U.S. 530, 540 (1980)).

---

[6] The Department's procedural argument fails because grandmother adequately preserved the argument before the trial court. Specifically, grandmother stated "For number five, our objection would just be that it would interfere with her first amendment rights."

Grandmother alleges that provisions three and five of the no contact order violate her First Amendment rights to freedom of speech, which provide:

> 3. [Grandmother] shall not reveal, disclose, or discuss any information whatsoever regarding [A.O.] to or with anyone except a licensed attorney at law who is in good standing with the Virginia State Bar, absent good cause shown and further order of the Court;
>
>     \*        \*        \*        \*        \*        \*        \*
>
> 5. [Grandmother] shall not post any information on the Internet or World Wide Web about [A.O.] . . . .

The Supreme Court previously determined that the best interests of a child are a compelling state interest. See Knox v. Lynchburg Division of Soc. Servs., 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982) ("Clearly, the protection of children from harm, whether moral, emotional, mental, or physical, is a valid and compelling state interest." (citing Stanley v. Illinois, 405 U.S. 645, 652 (1972))). Accordingly, the only questions that remain are whether the "restrictions further such an interest, and . . . a more narrowly drawn restriction will frustrate its interest." Adams Outdoor Advertising, 236 Va. at 381, 373 S.E.2d at 922-23 (citing Consol. Edison Co., 447 U.S. at 540).

In the current matter, the circuit court modified the original order in response to grandmother's continuous violations of its terms. The record indicates that grandmother determined A.O.'s location and followed A.O. to events at the Shire House, Spring House, and A.O.'s school. Additionally, grandmother called out to A.O. at the Shire House by using a nickname known only by A.O.'s close family members. Further, grandmother made attempts to contact A.O. on Facebook and other outlets on the Internet. In response to grandmother's noncompliance, the circuit court found it necessary to modify the no contact order to prohibit the exact conduct grandmother utilized to circumvent the original order. In making this determination the circuit court indicated its decision was based on "the welfare and safety of . . .

- 11 -

[A.O.]." The evidence suggests that a "more narrowly drawn restriction" had already failed in the original no contact order.

Most notably, "[w]hile the rights of freedom of speech and assembly are fundamental, they are not absolute and must be exercised in subordination to the general comfort and convenience and in consonance with peace, good order and the rights of others." York v. City of Danville, 207 Va. 665, 669, 152 S.E.2d 259, 263 (1967). In response to grandmother's failure to follow the terms of the original order, the circuit court determined the modified no contact order was necessary in order to protect the best interest of A.O., which is a compelling interest of the state. Having previously attempted a narrower restriction which failed, the circuit court did not abuse its discretion in modifying the order. Accordingly, this Court finds that the circuit court did not err in modifying the no contact order because the amendments are justified, even when measured against the strict scrutiny test applicable to restrictions of free speech.

### III. CONCLUSION

Based on the foregoing, this Court finds that the trial court did not err in modifying the no contact order because 1) it possessed authority to do so more than twenty-one days after entry of the previous no contact order; 2) the amendments are not unduly restrictive and vague; 3) the amendments do not interfere with grandmother's ability to litigate claims and her attorney-client privilege; and 4) assuming without deciding that the amendments restrict grandmother's constitutionally protected right of free speech, the restrictions are sufficiently narrow and are justified by the state's compelling interest, to satisfy a strict scrutiny analysis. Accordingly, the circuit court is affirmed in its modifications of the no contact order.

Affirmed.