COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Felton and Senior Judge Annunziata*
Argued at Alexandria, Virginia


JAMES J. D'AMBROSIO, JR.

OPINION BY
v. Record No. 1182-04-4         JUDGE ROBERT J. HUMPHREYS
MARCH 29, 2005

DEBRA MAUREEN FOWLER D'AMBROSIO


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge

David D. Masterman (Masterman & Graham, P.C., on briefs), for
appellant.

J. Patrick McConnell (David Zangrilli, Jr.; Odin, Feldman &
Pittleman, P.C., on brief), for appellee.


Appellant James J. D'Ambrosio, Jr. shares joint legal and physical custody of his child,

S.F., with appellee Debra M. Fowler, his former wife. D'Ambrosio appeals an order entered by

the trial court, contending that the trial court erred when it: (1) modified an earlier custody

decree by granting primary medical decision-making capacity to Fowler; and (2) entered an

injunction prohibiting D'Ambrosio from making "defamatory comments" about Fowler to "third

parties."[1] For the reasons that follow, we affirm the modification of the custody decree, but we

---

* Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

[1] The court also addressed multiple other issues in its order, specifically: (1) denying
Fowler's motion to enjoin D'Ambrosio from referring to S.F. by a different first name; (2)
denying D'Ambrosio's motions to change the time, date, and place of the exchanges; (3) denying
D'Ambrosio's motion to enforce telephone contact with S.F.; (4) denying D'Ambrosio's motion
to change S.F.'s last name to "D'Ambrosio"; (5) denying D'Ambrosio's motion to enjoin Fowler
from harassing third parties; (6) denying Fowler's motion to require D'Ambrosio to "share
information"; (7) granting Fowler's motion to compel D'Ambrosio to call ahead approximately

reverse and vacate the injunction prohibiting D'Ambrosio from making "defamatory comments" about Fowler to "third parties." Also, we deny Fowler's motion for attorney's fees for this appeal, and we remand for the sole purpose of allowing the trial court to recalculate the award of attorney's fees below.

## I. BACKGROUND

D'Ambrosio and Fowler married on September 22, 2000. Although Fowler was pregnant with S.F. at the time, the parties separated approximately one month later. Fowler returned to New York to live with her parents, and D'Ambrosio continued to reside in Fairfax. The parties subsequently divorced.

Fowler gave birth to S.F. on May 30, 2001. After a paternity test verified that D'Ambrosio was S.F's biological father, D'Ambrosio filed for visitation, which began in September 2001. On March 5, 2002, the parties were awarded joint legal and physical custody of S.F. Under the current arrangement, S.F. alternates between living in New York with her mother and living in Virginia with her father, spending two weeks at a time with each of her parents.

In early November, Fowler scheduled an eighteen-month checkup with S.F.'s pediatrician in New York. The check-up in New York was to occur on November 29, 2002. Upon learning of the appointment in New York, D'Ambrosio scheduled an eighteen-month checkup with a pediatrician in Virginia that was to occur on November 11, 2002, three weeks before the examination already scheduled in New York. As a result, S.F. received two

---

thirty minutes before he arrives for the exchanges; (8) ordering the parties to communicate by e-mail and to use telephone contact only in emergency situations; (9) clarifying an earlier order by indicating that neither party has to inform the other if S.F. is left in the care of a grandparent for more than three hours; and (10) ordering that neither party is to use family members as proxies for communication with the other party. None of those rulings are at issue in this appeal.

- 2 -

eighteen-month checkups from two separate pediatricians. The parties also had disagreements about whether S.F. should receive a flu shot and whether she was allergic to certain food items.

Also in the fall of 2002, Fowler learned that, for the past year, D'Ambrosio and his mother had apparently been calling S.F. by a different first name. Fowler then sent a series of letters, through counsel, requesting that D'Ambrosio stop calling S.F. by that name. The first letter, sent on November 11, 2002, indicated that Fowler had learned that D'Ambrosio and his mother were referring to S.F. by another name, and requested that they stop doing so because it would "have significant emotional and psychological impact on [S.F.] if it continues." In the letter of November 11, Fowler also noted that there had been some miscommunications concerning S.F.'s appointments with her pediatrician. Fowler observed that "[h]aving two pediatricians is certainly not in [S.F.'s] best interest," and she requested that D'Ambrosio cancel the eighteen-month checkup with the Virginia pediatrician.

In a letter of response, also dated November 11, 2002, D'Ambrosio's counsel failed to substantively address these concerns, merely asserting that "all reports from your client must be taken with a grain of salt."

Fowler's counsel sent a follow-up letter on December 16, 2002, indicating that he still had not received a response on, *inter alia*, the "[p]ediatrician issue." The follow-up letter also indicated that, "[b]y your lack of response, I assume that your client is continuing to do the things set forth in [the] previous correspondence . . . ."

On July 17, 2003, Fowler filed a motion for injunctive relief, seeking to prohibit D'Ambrosio from calling S.F. by a different first name, and also requesting attorney's fees and "such other relief as equity deems just." Because D'Ambrosio testified at trial that he was no longer referring to S.F. by a different name, Fowler's motion for an injunction on that ground

was ultimately denied.  That ruling is not at issue on this appeal.  Among the supporting allegations in the motion for injunctive relief, however, Fowler asserted as follows:

> The mother has encouraged the father to get a pediatrician in Virginia for emergency purposes in case there is a problem with [S.F.] while she is in Virginia.  The mother has kept the father informed of appointments with pediatricians in New York.  For example, on November 3, 2002, the mother informed the father that [S.F.] had an eighteen month check up appointment which was scheduled in New York.  The date of the appointment was given to the father so he could make appropriate plans to be in attendance at the eighteen month checkup should he desire.  Despite the fact that the father knew an eighteen month appointment was scheduled, he scheduled an eighteen month appointment for [S.F.] in Virginia prior to her appointment in New York.  This was not an emergency appointment.  The father knew that the mother could not travel to Virginia for this appointment on such short notice.  At the eighteen month appointment, apparently, there was a real problem about whether [S.F.] was to receive shots.  There was a miscommunication that could have created a significant problem for [S.F.].  While certainly [S.F.] needs a pediatrician in Virginia, she has since her birth been treated in New York by a pediatrician and [S.F.] *should have one primary pediatrician to cover all shots and regular issues involving [S.F.].*

(Emphasis added).

In a cross-motion, D'Ambrosio did not substantively address Fowler's request for injunctive relief, instead requesting:  (1) a modification of custody decree provisions concerning the time, date, and place for the exchanges; (2) an order compelling enforcement of the portion of the custody decree involving telephone conversations with S.F.; (3) an order changing S.F.'s last name to "D'Ambrosio"; and (4) an injunction to prohibit Fowler "from contacting the [Virginia] pediatrician's office except in writing and/or that other safeguards be implemented to control her conduct toward all third parties."  The trial court ultimately denied each of these requests, and they are not at issue in this appeal.

In response, Fowler filed a "Response to Cross-Motion and Supplemental Petition," in which she again asserted that D'Ambrosio had not complied with the earlier custody decree.

- 4 -

Specifically, Fowler alleged that D'Ambrosio, "without any prior consultation with [Fowler], set up a pediatrician appointment for [S.F.] in Virginia despite the fact that [S.F.] had a regular pediatrician in New York since her birth." Fowler additionally requested that D'Ambrosio "be restrained and enjoined from making defamatory comments about [Fowler] to third parties that may affect her ability to effectively parent and communicate." In support of this request, Fowler alleged:

> In addition to the above actions . . . [D'Ambrosio] has apparently been discussing specifics of this case with third parties and making defamatory comments to third parties as follows:
>
> a.      [D'Ambrosio] made an appointment with Dr. Hoang, a pediatrician in Virginia, for [S.F.] without any consultation or prior notice to Complainant.
>
> b.      At a meeting or meetings with Dr. Hoang, [D'Ambrosio] told Dr. Hoang that [Fowler] had psychological problems and that he believed that she had borderline personality disorder.
>
> c.      [D'Ambrosio] made this representation to Dr. Hoang knowing that there has never been any diagnosis for borderline personality disorder. [D'Ambrosio] made this statement to the pediatrician in an effort to try and poison the pediatrician's perception of [Fowler] and to exclude [Fowler] from any meaningful contact with the pediatrician in Virginia that he unilaterally selected.
>
> d.      D'Ambrosio gave no indication to [Fowler] that he had told the pediatrician in Virginia that he believed [Fowler] had psychological problems and had borderline personality disorder. It was not until [Fowler] received copies of records from the pediatrician in Virginia where it was noted by the pediatrician that [Fowler] had borderline personality disorder that she discovered these false representations.

Fowler again requested that the court additionally award "such other relief as equity deems just."

After a hearing on the merits, the trial court granted Fowler's motion for an injunction and enjoined D'Ambrosio "from making defamatory comments about [Fowler] to any third parties." The trial judge merely noted that, although he was not sure whether the statements

- 5 -

D'Ambrosio had made to the pediatrician "are defamatory, . . . they are certainly not complimentary, and I don't think the father should be making those statements to other professional personnel or anybody else."

The court, acting *sua sponte*, also modified the earlier custody decree with respect to S.F.'s health care. The court noted its concern "about the welfare of [S.F.] on this pediatrician decision, and it's a potentially . . . dangerous situation for the child to have two competing pediatricians, and so I'm going to modify the custody so that the mother is going to make the medical decisions for [S.F.]." The court also noted that, "[this] way, the child has a pediatrician who is primarily responsible for her care," observing that "it is fraught with peril to have it any other way." Thus, in its final order, the court ordered as follows:

> [Fowler] shall have the right to select a primary care physician for [S.F.]. [Fowler] will make all routine appointments for [S.F.] with a pediatrician for the diet, well-baby care appointments, check ups, shots, etc. [Fowler] shall have no obligation to advise [D'Ambrosio] prior to making normal appointments. [Fowler] shall, however, advise [D'Ambrosio] of the results of any doctor appointments during [S.F's] custodial time with her.

> [D'Ambrosio] shall continue to be able to take [S.F.] to the pediatrician in Virginia that he selects; however, the pediatrician in Virginia will be for sickness and emergencies only. [D'Ambrosio] shall advise [Fowler] of the results of any doctor appointments during [S.F.'s] custodial time with him.

Finally, the court awarded attorney's fees to both parties. The court awarded attorney's fees to Fowler: (1) on Fowler's request to enjoin D'Ambrosio from calling S.F. by a different name, reasoning that D'Ambrosio "was [not] forthcoming on that" and that he did not believe "it was a frivolous issue," (2) for D'Ambrosio's motions pertaining to "the exchanges at the mother's house," noting that the court "had just ordered this," and he "didn't hear any evidence other than that's the way the father wants it," (3) for D'Ambrosio's motion to have S.F.'s last name changed to "D'Ambrosio," and (4) "[o]n the enjoining of defamatory statements." The

- 6 -

court awarded attorney's fees to D'Ambrosio on Fowler's motion to compel D'Ambrosio "to share information," reasoning that "the evidence was that the father was sharing information." The award of attorney's fees to D'Ambrosio totaled $1,160, and the award of attorney's fees to Fowler totaled $7,178, resulting in a net award to Fowler of $6,018 in attorney's fees.

This appeal follows.

## II. DISCUSSION

D'Ambrosio raises three issues on appeal. First, he contends that the modification of the custody decree was improper because he lacked notice that the medical decision-making authority of the parties was at issue. Second, D'Ambrosio argues that the injunction prohibiting him from making defamatory comments about Fowler should be vacated because it constitutes a prior restraint on his First Amendment right to freedom of speech. Third, D'Ambrosio contends that, if we reverse on either of those two grounds, we should remand for a reassessment of attorney's fees. For the reasons that follow, we affirm the modification of the custody decree, but we reverse and vacate the injunction prohibiting D'Ambrosio from making defamatory comments about Fowler, and we therefore remand to the trial court for a reassessment of attorney's fees. Also, we deny Fowler's motion and decline to award additional attorney's fees for this appeal.

### A. Modification of the Custody Decree

On appeal, we view the evidence in the light most favorable to Fowler, the party prevailing below. Petry v. Petry, 41 Va. App. 782, 785-86, 589 S.E.2d 458, 460 (2003); Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). Thus, we will "discard the evidence of [D'Ambrosio] which conflicts, either directly or inferentially, with the evidence presented by [Fowler] at trial." Petry, 41 Va. App. at 786, 589 S.E.2d at 460.

- 7 -

When a trial court hears evidence at an *ore tenus* hearing, its factual findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support them. Wheeler v. Wheeler, 42 Va. App. 282, 288, 591 S.E.2d 698, 701 (2004); see also Ferguson v. Grubb, 39 Va. App. 549, 557, 574 S.E.2d 769, 772 (2003) (noting that, on appeal, the trial court's ruling is "peculiarly entitled to respect for [it] saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record" (internal quotations omitted)). Also, there is a presumption on appeal that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. Brown v. Spotsylvania Dept. of Soc. Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004).

D'Ambrosio contends that the trial court erred when it modified the custody decree, arguing that the court lacked authority to modify the decree because "neither party framed an issue of legal authority over medical decisions for the court." Thus, D'Ambrosio argues that, because he was not on notice that medical decision-making authority was at issue, he "did not get a fair day in court to offer his ample proof of why Ms. Fowler is a comparatively poor choice to have authority over [S.F.'s] medical care." D'Ambrosio concludes that the trial court's *sua sponte* modification of the prior custody decree deprived him of his constitutional rights to due process because he was not given an opportunity to present "a potent argument that Ms. Fowler was untruthful and inaccurate when dealing with [S.F.'s] medical issues and that she should never be permitted to take over the child's health." D'Ambrosio reasons that the court "did not take evidence on the parties' comparative abilities to make such decisions, did not have a basis upon which to rule, and made a clearly erroneous decision as a result." We disagree.

When a court modifies a prior custody order, "[t]he father's right of due process entitle[s] him to notice and an opportunity to be heard on this issue." Parish v. Spaulding, 257 Va. 357,

362, 513 S.E.2d 391, 393 (1999) (citing McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995); Brown v. Brown, 240 Va. 376, 380, 397 S.E.2d 837, 839 (1990)). "Nonetheless, 'in any child custody decision, the lodestar for the court is the best interest of the child,' and the due process rights of the parents must be tempered by this guiding principle." Haase v. Haase, 20 Va. App. 671, 681, 460 S.E.2d 585, 589-90 (1995) (quoting Smith v. Pond, 5 Va. App. 161, 163, 360 S.E.2d 885, 886 (1987)) (citation omitted); see also Commonwealth v. Hayes, 215 Va. 49, 53, 205 S.E.2d 644, 647 (1974) ("[I]n custody disputes the welfare of the child is of paramount concern.").

Although Fowler did not request the sole right to select S.F.'s pediatrician in her pleadings, she nonetheless prayed that the court grant any other relief it deemed just. Generally, "a court of equity may grant proper relief under the general prayer that is consistent with the case stated in the bill of complaint." Jenkins v. Bay House Assocs., L.P., 266 Va. 39, 44, 581 S.E.2d 510, 513 (2003). However, "a general prayer will support relief only for those matters placed in controversy by the pleadings and, thus, any relief granted must be supported by allegations of material facts in the pleadings that will sustain such relief." Id. at 45, 581 S.E.2d at 513; see also Gologanoff v. Gologanoff, 6 Va. App. 340, 346, 369 S.E.2d 446, 449 (1988) ("The issues in a case *are made by the pleadings* . . . ." (emphasis added)); Sherrod v. Bailey, 580 S.W.2d 24, 28 (Tex. Ct. App. 1979) ("It is well settled that a prayer for general relief will support any relief raised by the evidence and *consistent with the allegations in the petition*." (emphasis added)); 27A Am. Jur. 2d Equity § 86 (2004) ("[E]ven though a prayer for general relief may sustain appropriate unspecified relief, the relief must be consistent with facts alleged and the case stated in the pleadings.").

Here, the record contradicts D'Ambrosio's assertion that he was not on notice that the medical decision-making authority of the parties was at issue in this hearing. The motions before

- 9 -

the trial court clearly indicated that the issue of "competing pediatricians" was before the court. First, in Fowler's initial motion, she alleged that "[S.F.] should have one primary pediatrician to cover all shots and regular issues involving [her medical care]." And, in this motion, Fowler expressly requested "such other relief as equity deems just." Second, in D'Ambrosio's own motion, he requested that Fowler be enjoined "from contacting the [Virginia] pediatrician's office." And third, in Fowler's supplemental motion, she again asserted that D'Ambrosio was not complying with the earlier custody decrees, noting, for example, that D'Ambrosio "without any prior consultation with [Fowler], set up a pediatrician appointment for [S.F.] in Virginia despite the fact that [S.F.] had a regular pediatrician in New York since her birth."

Moreover, both parties addressed the issue of "competing pediatricians" in their opening statements. Counsel for Fowler asserted that D'Ambrosio was "trying to use [his] pediatrician as the primary pediatrician" and that, because "[t]here was no communication over the pediatrician, there [have] been problems with flu shots." In his opening statement, D'Ambrosio's counsel asserted that the New York pediatrician "was selected with no consultation with [D'Ambrosio]," also stating that the court "[is] going to hear much ado about whether each party tells the other one about the appointments before they are made or after they are made," concluding that "I am not sure what [the court is] supposed to do with that, but [the court is] going to hear about that."

Because the relief requested was consistent with the allegations in the petition and the arguments made at trial, and because the trial court has clear authority under Code § 20-108 to modify a custody decree when it deems it to be in the best interests of the child, see Bennett v. Dep't of Soc. Servs., 22 Va. App. 684, 696, 472 S.E.2d 668, 674 (1996) ("The court may modify its support order upon motion of any party in interest *or upon its own motion*." (emphasis added)); Barnhill v. Brooks, 15 Va. App. 696, 703-04, 427 S.E.2d 209, 214 (1993) (same), we conclude that the trial court did not err in fashioning "an appropriate remedy that comport[s]

- 10 -

with the best interest of the children, even [though it was not] specifically requested by the mother or father." Cloutier v. Queen, 35 Va. App. 413, 424, 545 S.E.2d 574, 579 (2001) (adopting custody remedy not suggested by either of the parties).

Furthermore, because the issue of "competing pediatricians" was clearly raised in the parties' motions, and because the issue was addressed both by counsel and by the evidence presented at trial, D'Ambrosio was on notice that the medical decision-making authority of the parties was subject to potential modification. Moreover, D'Ambrosio has not identified any evidentiary rulings prohibiting him from offering the evidence allegedly establishing that Fowler is unfit to make medical decisions for S.F. Nor did he "assert that he was unprepared to proceed on this issue or ask the court to consider the merits of the [issue] at a later date." Parish, 257 Va. at 362, 513 S.E.2d at 393.[2] Thus, D'Ambrosio had an opportunity to present and argue his case—he merely chose not to take advantage of that opportunity. See id. (holding that the father's right to due process was not violated where the father requested a custody hearing and the court, after determining that the mother should retain custody of the children, additionally held that the mother's move to a different state was in the best interests of the children without conducting a separate hearing on the issue, reasoning that the court had heard evidence related to the mother's decision to move the children from Virginia even though that issue was not expressly raised in the father's pleadings); see also Blinder & Co. v. State Corp. Comm'n, 227 Va. 24, 28, 313 S.E.2d 652, 654 (1984) ("[D]ue process requires only that . . . the opportunity for

---

[2] We also note that D'Ambrosio did not file a petition for reconsideration or rehearing on this issue during the twenty-one-day period before the court's decree became final. See Rule 1:1 ("All final judgments, orders, and decrees . . . shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer.").

a hearing must be provided, not that the party must actually have a hearing on the merits." (internal quotations omitted)).

Accordingly, D'Ambrosio's argument that his due process rights were violated because he was not on notice that this issue might be decided is without merit, and we therefore affirm the trial court's modification of the custody decree.

### B.  The Injunction Prohibiting "Defamatory Comments" to "Third Parties"

D'Ambrosio also contends that the trial court erred when it enjoined him from making "defamatory comments" to "third parties."  D'Ambrosio argues that the injunction constitutes a "prior restraint" that infringes his First Amendment right to freedom of speech, also contending that the injunction is legally insufficient because it is "vague" and was entered "without a showing of irreparable harm."  Although D'Ambrosio failed to properly preserve this issue for appeal, he asks that we invoke the ends of justice exception to consider the merits of this argument.  Because we agree that, under the circumstances of this case, the issuance of this injunction constituted "clear, substantial, and material" error, we consider the merits of this issue under the "ends of justice" exception to Rule 5A:18, and we reverse and vacate the injunction.

### 1.  The "Ends of Justice" Exception

Initially, we agree with Fowler that D'Ambrosio failed to adequately preserve this issue because he did not argue before the trial court that the injunction was vague, overly broad, and entered without a showing of irreparable harm.  See Roberts v. Roberts, 41 Va. App. 513, 525, 586 S.E.2d 290, 296 (2003) (noting that the Court of Appeals "will not consider on appeal an argument that was not presented to the trial court"); see also Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) ("The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.").  Moreover, D'Ambrosio failed to properly note his

exception to the trial court's issuance of the injunction.  See Rule 5A:18; see also Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 929 (2000).  As we have held, merely noting that the trial court's final order is "seen and excepted to for all reasons stated in the record" is insufficient under Rule 5A:18 to preserve an issue for appeal.  See Courembis v. Courembis, 43 Va. App. 18, 26, 595 S.E.2d 505, 509 (2004).

However, considering the patent overbreadth of this injunction, D'Ambrosio contends that we should invoke the ends of justice exception to consider the merits of this argument.  To avail himself of the ends of justice exception, D'Ambrosio must "affirmatively show that 'a miscarriage of justice [has] occurred, not . . . that a miscarriage might have occurred.'"  Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 11 (1989) (quoting Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)).  To sustain this burden, the trial court's error must be "clear, substantial, and material."  Id. at 132, 380 S.E.2d at 11.

Here, as discussed below, the trial court's decision to enter the injunction was "clear, substantial, and material" error.  Because the injunction is virtually unlimited in both breadth and duration, we invoke the ends of justice exception, reverse the judgment of the trial court, and vacate the injunction.[3]

---

[3] Because we hold that the trial court did not make the findings necessary for the issuance of injunctive relief, we need not reach D'Ambrosio's constitutional argument that the injunction constitutes an impermissible prior restraint.  See Bell v. Commonwealth, 264 Va. 172, 203, 563 S.E.2d 695, 715-16 (2002) (noting that "unnecessary adjudication of a constitutional issue" should be avoided), cert. denied, 537 U.S. 1123 (2003); see also Christopher v. Harbury, 536 U.S. 403, 417 (2002) (noting that it is the "obligation of the Judicial Branch to avoid deciding constitutional issues needlessly"); Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) (discussing various rules the Supreme Court developed to avoid "passing upon a large part of all the constitutional questions pressed upon it for decision," one of which being "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter").

2. <u>Whether the Trial Court Made the Findings Required for Injunctive Relief</u>

Turning to the merits of D'Ambrosio's argument, we note that, on appeal, the chancellor's findings of fact "carr[y] the same weight as a jury's verdict and will not be disturbed . . . unless . . . plainly wrong or without evidence to support [them]." <u>Willis v. Magette</u>, 254 Va. 198, 201, 491 S.E.2d 735, 736 (1997). Also, "[t]he determination whether to award an injunction is to be made by the chancellor, in the exercise of his discretion, after balancing the equities." <u>McCauley v. Phillips</u>, 216 Va. 450, 454, 219 S.E.2d 854, 858 (1975); <u>see also</u> <u>Blue Ridge Poultry & Egg Co. v. Clark</u>, 211 Va. 139, 144, 176 S.E.2d 323, 327 (1970). Thus, we will not reverse the trial court's decision to grant or deny an injunction absent an abuse of discretion.

Unquestionably, "[a]n injunction is an extraordinary remedy." <u>Unit Owners Ass'n of BuildAmerica-1 v. Gillman</u>, 223 Va. 752, 770, 292 S.E.2d 378, 387 (1982). Thus, "[t]o secure an injunction, a party must show irreparable harm and the lack of an adequate remedy at law." <u>Black & White Cars v. Groome Transp., Inc.</u>, 247 Va. 426, 431, 442 S.E.2d 391, 395 (1994). Also, an injunction "must be specific in its terms, and it must define the exact extent of its operation so that there may be compliance." <u>Gillman</u>, 223 Va. at 770, 292 S.E.2d at 387. In other words, the injunction "should set forth what is enjoined in a clear and certain manner and its meaning should not be left for speculation or conjecture." <u>Id.</u>

Here, the injunction meets none of these requirements. First, Fowler offered no evidence that, absent the injunction, she would be irreparably harmed, nor did the trial court make any factual findings that could be construed as a finding of irreparable harm. Because "proof of irreparable damage is absolutely essential to the award of injunctive relief," <u>Bradlees Tidewater, Inc. v. Walnut Hill Inv., Inc.</u>, 239 Va. 468, 471-72, 391 S.E.2d 304, 306 (1990), Fowler failed to establish that she was entitled to the "extraordinary remedy" of injunctive relief.

- 14 -

Second, Fowler failed to demonstrate that she had no adequate remedy at law. If D'Ambrosio did, in fact, make defamatory comments about Fowler to S.F.'s pediatrician and other individuals, Fowler would be able to bring a common law action for defamation. Because Fowler has an adequate remedy at law, injunctive relief is inappropriate. Cf. Reiter v. Mason, 563 So. 2d 749, 750-51 (Fla. Dist. Ct. App. 1990) (vacating injunction entered in child support case "which commanded [the mother] not to defame or disparage [the father's] character or reputation," reasoning that "'a court of equity will not enjoin the commission of a threatened libel or slander' [because] an action for damages will ordinarily provide a complete remedy" (quoting Moore v. City Dry Cleaners & Laundry, Inc., 41 So. 2d 865, 873 (Fla. 1949))); see also Alberti v. Cruise, 383 F.2d 268, 272 (4th Cir. 1967) (noting that, "[g]enerally[,] an injunction will not issue to restrain torts, such as defamation or harassment, against the person," because "[t]here is usually an adequate remedy at law which may be pursued").

Third, the injunction fails to sufficiently define the prohibited conduct and, therefore, is vague and overbroad. As D'Ambrosio notes, the injunction is "so broad, so unreasonable, and so open ended" that the manner in which he "is supposed to comply with this order is difficult to know." And, according to the Virginia Supreme Court,

> A first principle of justice is that an injunction not be so vague as to put the whole conduct of a defendant at the peril of a summons for contempt. Instead, courts must navigate carefully between the extremes of issuing a decree that is so vague and overreaching that all actions by the defendant might potentially violate the decree and a decree that is so limited as to be ineffective in preventing the harm contemplated . . . .

Tran v. Gwinn, 262 Va. 572, 584-85, 554 S.E.2d 63, 70 (2001) (citations and internal quotations omitted) (holding that, "while the [plaintiff] was entitled to an injunction, the injunction issued was not tailored to the offensive activities, was overbroad, and [therefore] exceeded the authority of the trial court").

- 15 -

Here, the injunction entered by the trial court is not tailored to restrain only the conduct sought to be prohibited. Rather than enjoining D'Ambrosio from informing pediatricians and other persons involved in S.F.'s care that Fowler had borderline personality disorder, the injunction broadly prohibits D'Ambrosio from making any "defamatory comments" about Fowler to any "third parties." This sweeping prohibition fails to adequately delineate which of D'Ambrosio's potential comments might violate the injunction and, therefore, lead to a finding of contempt of court. Accordingly, the injunction entered by the trial court is too vague and overly broad to withstand scrutiny on appeal.

Because the trial court did not make the findings necessary for injunctive relief of this nature, we hold that the trial court abused its discretion when it enjoined D'Ambrosio from making any "defamatory comments" about Fowler to any "third parties," and we therefore reverse and vacate the injunction.

### C. The Award of Attorney's Fees at the Trial Level

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "[T]he key to a proper award of counsel fees . . . [is] reasonableness under all of the circumstances revealed by the record." Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988); see also Smith v. Smith, 43 Va. App. 279, 290, 597 S.E.2d 250, 256 (2004) ("Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on 'reasonableness under all the circumstances.'" (quoting Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003))).

From the record, it is apparent that the court carefully considered the merits of each underlying claim as well as the time spent on each claim before deciding whether to award

- 16 -

attorney's fees. After reviewing each claim, the court awarded attorney's fees only for a select few of the many motions pending before the court. Also, the court only awarded a fraction (approximately $6,000) of Fowler's overall fees for this case (which exceeded $32,000). However, because the award of fees was based, in part, on the trial court's decision to enjoin D'Ambrosio from making "defamatory comments," we remand for the sole purpose of reconsidering the award of attorney's fees consistent with the holding of this opinion.

D. Fowler's Motion for Attorney's Fees on Appeal

After considering the merits of each of the arguments raised on appeal, we find that these arguments and the circumstances under which they have been raised do not warrant an additional award of attorney's fees. D'Ambrosio appealed only two of the trial court's many rulings that were adverse to him, and we have, in fact, reversed the judgment of the trial court on one of those two grounds. We also note that, although Fowler has incurred a substantial debt from attorney's fees in the past, she represented in her brief that she is now a licensed nurse in the State of New York. Considering all of the circumstances, Fowler's motion for an additional award of attorney's fees is, therefore, denied.

III. CONCLUSION

For these reasons, the judgment of the trial court is affirmed in part and reversed in part. We affirm the trial court's modification of the custody decree to award medical decision-making capacity to Fowler. However, we reverse and vacate the order enjoining D'Ambrosio from making "defamatory comments" about Fowler to "third parties." And, because the award of attorney's fees was based, in part, on the trial court's decision to enter this injunction, we remand

with instructions to reassess the award of attorney's fees.  Finally, we deny Fowler's request for an award of additional attorney's fees for this appeal.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>