COURT OF APPEALS OF VIRGINIA


Present:   Judges Powell, Alston and Senior Judge Annunziata
Argued at Alexandria, Virginia


SHARON RUTH TUCKER

                                                    MEMORANDUM OPINION[*] BY
v.       Record Nos. 2496-09-4 and 2497-09-4       JUDGE ROSEMARIE ANNUNZIATA
                                                    FEBRUARY 22, 2011
JOHN HARRISON CLARKE


                     FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                               Jane Marum Roush, Judge

              Sharon Ruth Tucker, *pro se*.

              David R. Clarke (Blankingship & Keith, on brief), for appellee.


       Sharon Ruth Tucker (mother) appeals a custody order in which the trial court awarded John

Harrison Clarke (father) physical custody of the parties' child and final decision-making authority

over education and day care issues for that child.  Mother argues that the trial court erred by

(1) depriving mother of her right to due process under the Virginia and United States Constitutions

by denying her request for an evidentiary hearing before her decision-making authority over

education and day care issues was terminated; (2) concluding that granting father ultimate

decision-making authority over education and day care issues did not impact mother's legal custody

rights; (3) depriving mother of her right to receive notice under the Due Process Clauses of the

Virginia and United States Constitutions by limiting mother's legal custody rights when both

father's custody petition and mother's amended cross-petition requested a change in physical

custody only; (4) applying improper legal procedure in denying mother's motion to disqualify

father's counsel by weighing factors without having first determined whether father's counsel

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

violated any ethics rules; (5) failing to find, as a matter of law, that the loans made by father's counsel to his client for living expenses constitute a violation of Rule 1.8(e) of the ethics rules, given that the existence of these loans was factually not in dispute; (6) concluding that the various factors (e.g. prejudice to father, hardship to mother, and timeliness of the filing) weighed against granting mother's motion to disqualify father's counsel; (7) failing to sign mother's written statement of facts for the September 4, 2009 hearing on mother's motion to disqualify father's counsel[1]; (8) denying mother's request for an order that would have enabled her to listen to certain portions of the audiotape for the September 24, 2009 hearing and have it inspected by an independent audio forensic examiner, or otherwise verify the transcript for the hearing under conditions deemed reasonable by the court; and (9) not conditioning the award of primary physical custody to father by ordering him to move out of an apartment building with a staircase that violates building safety codes and poses a serious threat to the child's health and welfare, or alternatively, not addressing the issue in its ruling or providing any explanation as to why it placed the child in a home that poses a safety risk. We find no error, and affirm the decision of the trial court.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the party prevailing below. D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335, 610 S.E.2d 876, 882 (2005) (citations omitted).

The parties divorced on January 11, 2008. The final decree of divorce incorporated the parties' agreement, which provided for joint legal and physical custody of the parties' minor child.

---

[1] On June 17, 2010, this Court remanded the case to the trial court to take appropriate action as required by Rule 5A:8(c)(2) and (d). On August 18, 2010, the trial court prepared and signed a statement of facts regarding the September 4, 2009 hearing. Mother subsequently filed objections to the trial court's statement of facts. The trial court has complied with Rule 5A:8; therefore, we need not address mother's objections.

On April 24, 2009, mother filed a motion to increase child support. Subsequently, father filed a petition for modification of custody, and mother filed a cross-petition. Both parties sought primary physical custody of the child.

In conjunction with the upcoming hearing on the motions, mother filed a motion to disqualify father's counsel. Both it and her subsequent motion for reconsideration were denied.

After a two-day *ore tenus* hearing on September 23 and 24, 2009, the trial court denied mother's motion to increase child support and granted father's request for primary physical custody. The court's order reflecting its decision was scheduled for hearing and entry on October 14, 2009. On the day prior to the scheduled hearing, mother filed a motion requesting "clarification regarding her decision-making authority as joint legal custodian" and requested an evidentiary hearing before the trial court issued any modified ruling "that would in any way limit or terminate the Mother's existing rights as a joint legal custodian." Before entering its custody order on October 14, 2009, the trial court denied mother's motion for an evidentiary hearing and granted father "ultimate decision making authority in matters of education and daycare, but only after consultation with Defendant/Mother." The trial court entered its custody order on October 14, 2009, and these appeals followed.

## ANALYSIS

### I.

Did The Trial Court Violate Mother's Due Process Rights Under the Virginia and United States Constitutions By Denying Her Request for an Evidentiary Hearing Before Her Decision-Making Authority over Education and Day Care Issues was Terminated?

Mother argues that her due process rights were violated when the trial court denied her motion for an evidentiary hearing before modifying its previous ruling and awarding father "ultimate decision making authority in matters of education and daycare, but only after consultation with [mother]." We disagree.

> We recognize that questions of child custody, whether in a divorce proceeding or a civil action by the Commonwealth, involve a fundamental liberty interest of the parent. Accordingly, the parent must be accorded the benefits of due process. Rader v. Montgomery Co. Dep't of Social Servs., 5 Va. App. 523, 528, 365 S.E.2d 234, 237 (1988). Nonetheless, "in any child custody decision, the lodestar for the court is the best interest of the child," Smith v. Pond, 5 Va. App. 161, 163, 360 S.E.2d 885, 886 (1987), and the due process rights of the parents must be tempered by this guiding principle.

Haase v. Haase, 20 Va. App. 671, 681, 460 S.E.2d 585, 589-90 (1995).

During the two-day trial on the issue of child custody, the trial court heard evidence relating to the decisions each parent made regarding education and childcare.

The trial court heard evidence that, when the child was in mother's custody, he attended numerous preschools. Evidence was presented showing that, since the child's birth,[2] he had been cared for by at least three babysitters and had attended at least three different day care facilities. Evidence showing that a nanny cared for the child for extended periods of time was also presented. Although the day care's educational program began at 9:00 a.m., mother, typically, brought the child to the program after 9:00 a.m., and although the child could have remained at school for the entire day, the mother instructed the nanny to pick up the child around 12:00 p.m.[3] The child was then cared for by the nanny, often until 8:30 p.m. or later, when mother arrived to pick him up  Mother adhered to this schedule although she had the option of beginning her workday at an earlier time and leaving at an earlier time.[4] Even when mother was unemployed and searching for work, she continued to bring the child to the day care program

---

[2] The child was three and one half years old at the time of the hearing.

[3] Initially, the child attended the half-day program at the day care but, at the time of the trial, the nanny would pick up the child between 3:30 p.m. and 5:00 p.m.

[4] When mother was working at Marwood Group, for example, she could have worked from 9:00 a.m. until 5:00 p.m., but instead, she arrived between 10:30 a.m. and 12:00 p.m. and worked until 8:00 p.m.

after 9:00 a.m., asking the nanny to pick him up at 12:00 noon and keep him until 7:30 p.m. At times when mother worked late, the nanny kept the child overnight.

Father testified that he was concerned that the child did not have a regular schedule or regular sleeping habits because of mother's choices. He also presented evidence of his plans to enroll the child in Bright Horizons day care if he were awarded custody and submitted a four-page exhibit regarding Bright Horizons and its offerings. Mother was given an opportunity to cross-examine father but did not ask him about his plans to enroll the child in Bright Horizons or his plans for childcare if he were awarded custody.

After taking two days of evidence, the trial court ruled from the bench that primary physical custody was to be awarded to father. In reaching its decision, the trial court found that father was better able to decide issues relating to the child and, specifically, found that father would be "most attuned to the child's needs as he does enter more formal education besides the type of education typically provided in preschool." In addition, the trial court found that father could more accurately assess the child's emotional, intellectual, and physical needs.

Before the court's decision could be memorialized in a court order, mother filed a fourteen-page motion, with attachments, in which she noted a disagreement had arisen between the parties "as to whether or not the Father has the right to unilaterally make decisions regarding [the child's] preschool and after-hours child care providers without the Mother's consent." In her motion, mother requested the trial court to clarify her decision-making authority at the non-evidentiary hearing scheduled for October 14, 2009. Alternatively, mother requested that a separate hearing be conducted to specifically address this issue.

In her motion, mother alleged that father, as the child's primary custodian, was asserting the right to "unilaterally make all decisions regarding [the child's] preschool and after-hours child care providers without first obtaining the Mother's consent." In support of her prayer for

relief, mother asserted that, prior to the custody hearing, she had made all the decisions regarding the child's preschool and almost all the decisions regarding the child's after-hours childcare providers. Mother also contended that father had hired a nanny who mother believed would not exercise good judgment about the child's safety. Mother conceded in her motion that the father had, in fact, agreed not to use the nanny in question, but contended his judgment regarding appropriate nannies had proved to be flawed since the earlier hearing. Mother also noted that because father's work hours changed after the two-day hearing, an after-hours nanny would be needed and that further evidence should be taken to assure mother equal participation in the decision. Finally, mother's motion raised the parties' disagreement about the preschool in which the child should be enrolled, although father's intent to choose the preschool he selected was addressed at the prior custody hearing. Mother asked that the trial court permit her to "retain her rights as [the child's] joint legal custodian, so that she will have a deciding vote with regard to who is entrusted to care for [the child]."

We find no error in the trial court's determination that no additional evidence was needed regarding which parent was better able to decide the education and childcare issues in the event the parties could not agree. Evidence addressing which parent had greater ability to make such decisions was presented in the two-day hearing on custody, and mother was given a full opportunity to counter father's case and to present evidence in support of her parenting abilities. We, thus, conclude that mother was accorded her due process rights under both the Virginia and United States Due Process Clause. "'Due process requires only that . . . the opportunity for a hearing must be provided, not that the party must actually have a hearing on the merits.'" D'Ambrosio, 45 Va. App. at 339, 610 S.E.2d at 884 (quoting Blinder & Co. v. State Corp. Comm'n, 227 Va. 24, 28, 313 S.E.2d 652, 654 (1984) (internal quotations omitted)). In this

case, mother had the opportunity to be heard and present evidence on the issues she raised in her post-hearing motion.

II.

<u>Did the Trial Court Erroneously Conclude That Mother's Legal Custody Rights Were Not Impacted by Its Award of Ultimate Decision-Making Authority Over Education and Day Care Issues To Father?</u>

Mother contends the trial court erred in concluding that granting father ultimate decision-making authority over the child's education and day care issues did not impact mother's legal custody rights. Although the court's decision impacted the mother's joint custody rights, we find no error.

> "Joint custody" means (i) joint legal custody where both parents retain joint responsibility for the care and control of the child and joint authority to make decisions concerning the child even though the child's primary residence may be with only one parent, (ii) joint physical custody where both parents share physical and custodial care of the child, or (iii) any combination of joint legal and joint physical custody which the court deems to be in the best interest of the child.

Code § 20-124.1. As the statute and our cases make clear, the scope of this shared or coincident responsibility for the care of a child is limited by a superceding principle of law that focuses not on parental rights, but on the best interests of the child. <u>See</u> <u>Smith v. Pond</u>, 5 Va. App. 161, 163, 360 S.E.2d 885, 886 (1987) ("In any child custody decision, the lodestar for the court is the best interest of the child." (citing <u>Venable v. Venable</u>, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986))). Thus, where the parents' exercise of joint responsibility for and authority to make decisions for the child is not consistent with the child's best interest, the court may modify their joint legal status by fashioning and applying "any combination of joint legal and joint physical custody which the court deems to be in the best interest of the child." Code § 20-124.1.

This is precisely what the trial court did here. Commenting on the impasse in decision-making that had occurred in the short period of time following its custody decision from

- 7 -

the bench, the trial court explained, "if the parents can't come to an agreement, we can't have the child on stalemate."

We find no abuse of discretion in the court's resolution of the problem presented by the parties' inability to resolve their differences. "Custody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right. The discretion afforded trial courts under the best-interests test, Code § 20-124.3, reflects a finely balanced judicial response to this parental deadlock." Griffin v. Griffin, 41 Va. App. 77, 83, 581 S.E.2d 899, 902 (2003).

The trial court did not err in granting father decision-making authority regarding the child's education and day care arrangements. See, e.g., D'Ambrosio, 45 Va. App. at 339, 610 S.E.2d at 884.

III.

Did the Trial Court Violate Mother's Right to Notice Under the due process clause of the Virginia and United States Constitutions When Both Parties Requested a Change in Physical Custody Only?

Mother argues the trial court erred by violating her right under the Due Process Clauses of the Virginia and United States Constitutions to receive notice that her joint legal custody status would be modified because both father's custody petition and mother's amended cross-petition requested a change in physical custody only.

The record does not support mother's contention that her right to notice was violated. Mother, herself, asked the court to address the nature of her joint legal custody status. Prior to the October 14 hearing when the court's custody order was to be entered, mother filed "Mother's Motion Requesting Clarification Regarding her Decision-Making Authority as Joint Legal Custodian, and Request for an Evidentiary Hearing Before Any Modifications Are Made." In the motion, mother requested that the trial court resolve the parties' differences regarding the child's

education and childcare and asked the trial court to clarify which parent was to make the decisions with respect to those issues. Having raised the issues, mother cannot now be heard to complain. See Parish v. Spaulding, 257 Va. 357, 362, 513 S.E.2d 391, 393 (1999).

Moreover, although neither party requested a change in their joint legal custody status, both parties requested the trial court to provide "further relief as the Court deems appropriate and equitable and in the best interests of [the child]," father in his initial petition for modification of custody and mother in her amended cross-petition to modify custody. Such a general prayer for relief will support a remedy that comports with the best interest of the child when the "'allegations of material facts in the pleadings . . . sustain such relief.'" D'Ambrosio, 45 App. at 337, 610 S.E.2d at 883 (quoting Jenkins v. Bay House Assocs., L.P., 266 Va. 39, 45, 581 S.E.2d 510, 513 (2003)).

The parties' pleadings placed the issues of preschool and childcare in controversy and sustain the relief granted. Father's petition for modification of custody asserted mother's "failure to provide any semblance of a routine" for the child; her "failure to establish boundaries for [the child], regularly failing to discipline and impress upon [the child] what is acceptable and unacceptable behavior;" her "failure to abide by a schedule that allow[ed] [the child] adequate sleep . . . [and] to provide [the child] with regular and nutritious meals;" her "failure to abide by doctor's orders concerning [the child's] health;" and her failure "to actively support [the child's] contact and relationship with Father." Father's allegations further raised "Mother's inappropriate smothering of [the child], and her seemingly compulsive need to constantly declare her love to [the child]." Father also claimed that mother "routinely dismisses" his expressed concerns about the child's welfare and that he had "exhausted all efforts and attempts to persuade Mother to educate herself about the fundamental needs of a toddler and what constitutes good parenting."

In her amended cross-petition to modify custody, mother alleged that she had been the primary physical custodian of the child; that father "imposes a strict, authoritarian style of discipline upon [the child] that is wholly inappropriate and entirely counterproductive to use with a child as young as 3-years old;" that granting father physical custody would be "extremely disruptive and detrimental" to the child; that father "acknowledges [the child's] strong attachment" to her; and that father "lacks the emotional capacity to provide [the child] with the love and nurturing that he needs at such a young age." Mother also set forth her disagreement with father's intention "to take [the child] out of the school he had been attending for over a year and a half . . . and, likewise, remove [the child] from the care of the . . . nanny who has been taking care of [the child] since he was 8-months old." Mother further alleged that father's intent to do so was not in the child's best interest, but a reflection of father's "personal financial interests." In mother's post-hearing motion, she reprised her concerns about what education and childcare arrangements were best for the child, and the parties' disagreement on those issues, albeit with further specific allegations regarding her disagreement with the decisions that father had made since the custody hearing and his unwillingness to adopt her position on those issues.

Accordingly, we find no error in the relief the trial court granted because the pleadings placed in controversy the parties' decision-making authority over the child's education and childcare as well as the parenting abilities of each parent; they, thus, support the relief granted. "[T]he trial court did not err in fashioning 'an appropriate remedy that comports with the best interest of the children, even [though it was not] specifically requested by the [parties].'" Id. at 338, 610 S.E.2d at 883 (quoting Cloutier v. Queen, 35 Va. App. 413, 424, 545 S.E.2d 574, 579 (2001)).

IV.

Did the Trial Court Apply Improper Legal Procedures in Addressing Mother's Motion to
Disqualify Counsel?

Mother argues that the trial court applied improper legal procedures in denying her

motion to disqualify father's counsel, contending that it should have first determined that father's

counsel had, in fact, violated the relevant ethical rules, before examining the factors relevant to

its consideration.

Father was represented by his brother at trial.  During the pendency of the litigation,

father's brother loaned father money and, on that basis, mother filed a motion to disqualify him.[5]

She alleged that he violated Rule 1.8(e) of the Virginia Rules of Professional Conduct, which

provides that "A lawyer shall not provide financial assistance to a client in connection with

pending or contemplated litigation . . . ."

On the same grounds, mother also alleged that father's counsel violated Rule 2.1 of the

Virginia Rules of Professional Conduct, which provides that "In representing a client, a lawyer

shall exercise independent professional judgment and render candid advice."[6]

In its letter opinion issued on September 23, 2009, the trial court denied mother's motion

to disqualify father's counsel and stated, "Even assuming such a rule was violated,

disqualification is an inappropriate remedy in this case."

---

[5] The first day of the trial for the child support and custody motions was scheduled for September 23, 2009, less than one month from the time that mother filed her motion to disqualify father's counsel.

[6] Father filed a response to mother's allegations and denied any ethical violations. Father's counsel stated that the loans were extended to father due to their relationship as brothers and not because of their attorney-client relationship.  According to father, the loans were not connected to the litigation.  In addition, father questioned how mother would know whether father's counsel was providing independent and candid advice.

Mother cites no authority for the proposition that the trial court is required to make the underlying factual finding before applying what is, essentially, a "harmless error" analysis. See Rule 5A:20(e). We find that mother's failure to comply with Rule 5A:20(e) is significant, so we will not consider this issue. See Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

V.

Did the Trial Court Err in Not Finding that the Loans Made by Father's Counsel to his Client violated Rule 1.8(e)?

Having concluded the trial court need not have decided that father's counsel violated the Rules of Professional Conduct in order to determine whether to grant mother's motion, we decline to address this question.

VI.

Did the Trial Court Erroneously Conclude that Various Factors Weighed Against Granting Mother's Motion to Disqualify Father's Counsel?

In denying mother's motion to disqualify father's counsel, the trial court assumed without deciding that the alleged violations had been committed and, after considering the factors discussed in In re Chantilly Constr. Corp., 39 B.R. 466, 468-69 (Bankr. E.D. Va. 1984), concluded they weighed against mother's motion to disqualify father's counsel.

> A motion for the disqualification of counsel is one that requires close inspection. A consideration involving the disqualification of counsel requires that the court balance several important factors: the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. See Powell v. Alabama, 287 U.S. 45, 53 (1932); United States v. Smith, 653 F.2d 126, 128 (4th Cir. 1981); In re Asbestos Cases, 514 F. Supp. 914, 925 (E.D. Va. 1981) (dicta). Further complicating a court's task is the possibility of a disqualification motion being misused for the obvious tactical advantages. Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 501 F. Supp. 326, 331 (D.D.C. 1980); Ross v. Great Atlantic & Pacific Tea Co., 447 F. Supp. 406, 409-10 (S.D.N.Y. 1978). As a result of

- 12 -

> the above considerations, a high standard of proof is required of the party seeking disqualification. Government of India v. Cook Industries, Inc., 569 F.2d 737, 739-40 (2d Cir. 1978).

Id.

In denying mother's motion, the trial court found that mother had "fail[ed] to allege how she would be harmed if her motion is denied" and that "[a]ny hardship to [mother] by [father's counsel's] continued involvement in this case is attenuated at best." The trial court, further, concluded that the hardship to father would "likely be severe" because father had been represented by his brother since the parties' divorce in 2008. It also noted that father's attorney was familiar with the issues and had "develop[ed] a litigation strategy." Finally, the trial court noted that mother had filed her motion less than one month before trial, "on the eve of the custody and support hearing."

The trial court did not err in concluding the factors weighed against granting mother's motion to disqualify father's counsel.

## VII.

### Did the Trial Court Err in Denying Mother's Request To Allow Her to Listen to Certain Portions of the Audiotape for the September 24, 2009 Hearing and Have it Inspected by an Independent Audio Forensic Examiner, or Otherwise Verify the Transcript for the Hearing under Conditions Deemed Reasonable?

Mother argues that the trial court erred in denying her request to review the audiotape of the September 24, 2009 hearing to verify the accuracy of the transcript.

At the hearing on October 14, 2009 and in a motion filed November 23, 2009, mother noted her objections to the transcript and requested that she be allowed to review the audiotape, claiming the court reporter did not accurately transcribe the entire proceedings.

The trial court denied her motion and issued an order on December 4, 2009 overruling mother's objections to the transcripts, stating that "Pursuant to Rule 5:11, the Court has reviewed the transcripts of the trial of September 23-24, 2009 and the hearing of October 14, 2009 and

- 13 -

finds them to be accurate. The Court has signed the transcripts in accordance with Rule 5:11(d)."

Rule 5A:8(d) of this Court, the equivalent of Rule 5:11(d) of the Supreme Court of Virginia, provides that "The judge's signature on a transcript or written statement, without more, shall constitute certification that the procedural requirements of this Rule have been satisfied."

Although mother disagreed with the trial court's ruling that the transcripts were accurate, mother provides no legal authority to support her argument that the trial court abused its discretion in failing to permit her to listen to the audiotape of the hearing in light of the trial court's affirmation that it had reviewed the transcript for error. See Rule 5A:20(e). Mother had the burden of showing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

Because we find that mother's failure to comply with Rule 5A:20(e) is significant, we will not consider this issue. See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention.").

VIII.

Did the Trial Court Err by Failing to Condition the Award of Primary Physical Custody to Father by Ordering Him to Move Out of an Apartment Building with a Staircase that Violates Building Safety Codes and Poses a Serious Threat to the Child's Health and Welfare, or Alternatively, Not Addressing the Issue in its Ruling or Providing Any Explanation as to Why It Placed the Child in a Home that Poses a Safety Risk?

Mother argues that the trial court abused its discretion in not ensuring the safety of the child when it failed to consider the child's exposure to an unsafe staircase in father's apartment

building.[7] Mother asserts that the staircase violates building codes and that its unsafe condition led to the child suffering severe injuries when he was thirteen months old. Father countered that the child was not aware of its location in the building and had not returned to the staircase.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Contrary to mother's assertion, the record shows the trial court considered the condition of the staircase, stating expressly that it had, and it further considered and weighed the father's testimony that the child no longer used the staircase and was unaware of its location. Based on the evidence before the trial court, it could properly determine that there was no basis for ordering father to move from his apartment building in order to grant him primary physical custody. Accordingly, we conclude that the trial court did not abuse its discretion in awarding physical custody to father without imposing the condition requested by mother.

IX.

Should this Court Award Attorney's Fees and Costs to Father?

Father asks this Court to award him attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). On consideration of the record before us, we grant father's request for attorney's fees and costs, and we remand for

---

[7] In her question presented, mother contends the trial court erred by not conditioning its award of physical custody to father so long as he moves out of his apartment building and that the trial court erred by not providing an explanation as to why it placed the child in father's home. Mother did not preserve these issues for appeal; therefore, we will not consider them. See Rule 5A:18; Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (We "will not consider an argument on appeal which was not presented to the trial court.").

the trial court to set a reasonable award of attorney's fees and costs incurred by father in these appeals.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.  We remand this case to the trial court for determination and award of the appropriate appellate attorney's fees and costs.

<u>Affirmed and remanded.</u>